I recorded these eyewear videos long before they were uploaded  After today's life is over, my eyes can finally open The next case is number 09-1147, Aspects Eyewear against Clarity Eyewear. Mr. Ligodino. Good morning. May it please the court. Among other things, the district court erred by concluding that there was no genuine issue of material fact on the question of material economic prejudice. On the one hand, the district court said that there was a possible factual dispute between the parties on the extent of Clarity's prejudice. But then the court said that was irrelevant because Clarity had suffered at least some prejudice. And it's our position that by reaching that conclusion, the district court writ out the word material from the requirement of material prejudice in the context of an equitable estoppel defense. The prejudice requirement for that defense is not just any prejudice, it's material prejudice. Now, Clarity relied upon certain investments that they made in the business in the district court to say that they had suffered prejudice. One of them was the plant. They went into a new facility, which they say was in part due to expanded sales of the infringing product. They really talked about the totality of their expansion and commitment during this period of silence. You could take them one by one and say it's not significant, but you put it all together. Where does that leave you with, again, a period of silence? Well, I think you have to take them one by one as they did in their moving papers in the district court. And then when you put them all together, I don't believe that it's dispositive on the issue of materiality or nexus. Because, for example, the plant expansion, actually the district court said there was no nexus there because that happened in 2007. And on August 23rd, 2006, Aspects had sent what was the definitive infringement letter. And they still went ahead with the expansion anyway in 2007, and they didn't even get their contractor proposals until months after that Aspects letter. So the district court, I think, discounted the facility expansion. But the one thing that permeates Clarity's affidavit contentions in the district court on prejudice is that they say, in part, we made this monetary investment due to AIRMAG. Well, they didn't produce any documents to us. They didn't produce any documents showing why they increased the sales force over time. They sell over 100 products, not just AIRMAG. If there was one out of the 32 people that spends part of his or her time selling AIRMAG, I don't believe that's material prejudice. But we don't even know if it's that because they didn't produce any documents on it. And all we have is the conclusive reassertions of their declarant. They didn't demonstrate how these people are paid. Material prejudice requires substantial investments that are permanent that you can't get back, that are lost. Well, if these people are paid on a contract basis, they don't have any insurance. They don't have any prospect of permanent employment. That's not a permanent expense. Now let's look at the advertising. They say they spent about $12,500 during the years 2004 through 2007 on advertising just AIRMAG. Well, somebody had to do a calculation from some internal records, but we don't have them. So we have Ms. Yanomoto's conclusory assertion that that's what we spent. And they shouldn't be able to count the period 2006-2007 because they got the infringement letter in mid-2006. So what are we dealing with now? 2004-2005, $25,000 of undocumented advertising expenses at trade shows? Mr. Nicodema, how do you distinguish this case from the wafer, shave, and the shole case in which this Court upheld equitable estoppel claims? I think there's a clear distinction there, Your Honor, and it has to do with the issue of misleading conduct. Let's take shole, for instance. In shole, there was an express charge of infringement of a particular product on a particular patent. The defendant comes back and says, hey, we're launching a non-infringing alternative. You tell us whether that infringes or not, and if it infringes, we'll stop. And the defendant openly touted this non-infringing product, got right in the face of the patentee, and then there was a period of what the Court determined to be unreasonable silence. We don't have that here at all. We don't have facts like that at all. The same thing with wafer, shave. There was an express charge of infringement of a particular product, and there was a hard date for the commencement of legal activity. I believe it was two weeks. I believe the letter said, in two weeks, we're going to sue you. So there was a threat of immediate patent enforcement, and we don't have that here. Would you say that your March 10th letter doesn't suggest infringement? No, it's not a specific threat of infringement of an identifiable product. It said some of your products, without mentioning any names, may be covered by this patent. Then the letter went on and asked for further information from Clarity so that a resolution might be achieved. That's not the same as in wafer, shave or in Shoal, where there was an express charge by the patentee saying this particular product infringes this particular patent. We don't have that here. This is a letter that may or may not have been sufficient to commit a declaratory judgment action in response. But is that the same as a letter when everyone knows what's involved? You ask for identification of the suppliers and others, which suggests that there really wasn't any ignorance on anyone's part as to what was being discussed. But you're saying that unless the letter is strong enough and specific enough to provide declaratory judgment standing, it can't begin a period of estoppel? That's correct, Your Honor, and let me back up just a little bit. I don't think it can be concluded that everybody knew what was going on here, because Air Mag wasn't even mentioned in that letter. Now, the patentee didn't say in that letter, we know what you're saying. Had Air Mag actually launched before the letter? I'm not sure. I'm not sure. I'd be guessing. I'm sure it's in the record, but I'm not sure. But it's clear from that letter, where at least a reasonable inference can be drawn, and you know the judge on summary judgment had a charge to draw all reasonable inferences in our favor, that they didn't know exactly what was going on. That's why they asked them for further information on the product. Now, getting back to Your Honor's question on declaratory judgment, that wasn't briefed below. Nobody discussed metamune, but my position is that that letter does not set forth a concrete dispute of sufficient immediacy and reality. Let's assume that it did not, because I realize that the issue was not pressed. Yes. But nonetheless, additional information was requested. And never attended. Yes, exactly. So, here we have perhaps an ambiguous or obscure letter without a response to additional information. You're saying, nonetheless, no inference at all was entitled to be drawn as to the lack of a response and as to the further silence. Well, no inference that would require or justify this extraordinary remedy of estoppel. I'm going by what I view as the Court's previous cases in Hoddle and Ackerman, where the Court said equitable estoppel has only been applied in situations where we have this express charge of infringement and a threat of immediate patent enforcement. Now, when you view that letter as a whole, we don't get there, Your Honor. Even the judge said, even the judge, the district court judge, when he characterized that letter, he said that letter contended or asserted a possible infringement situation. That isn't the way I read Hoddle and Ackerman. They require something much more, and that's what happened in Wafer, Shave, and in Shoal. There was a specific, defined infringement threat, a specific accusation against a particular product, and a threat of immediate enforcement. Now, this letter was an invitation for the parties to sit down and try to work this out. It wasn't, we're going to sue you tomorrow. The judge, in my view, cherry-picked the letter. He relied on certain words and phrases, which he believed sounded in immediate enforcement, and ignored the others. You have to look at these letters as a whole. You have to draw the inferences in our favor, not Clarity's, and weigh the evidence in the light most favorable to us, and he didn't do that. He did the opposite, and I think when you're dealing with an equitable remedy, something that prevents the patentee from suing at all, that was wrong. He shouldn't have done that, and that's where he committed error on the question of misleading conduct. Now, this would have been tried, presumably, just to the court, because it's an equitable issue, right? Well, that's an interesting question, Your Honor, because, like many equitable issues, there could be advisory jury findings. I'm going to add that, but it's a bench-triable issue, correct? I mean, you haven't had an entitlement to anything other than the city court. Like an equitable conduct, and my position on that is, when you have a conclusory, vague declaring, with no internal documents, we should have live testimony. You raise credibility issues, you raise state-of-mind issues that can only be determined in a trial of merits where either the jury or the judge assesses the credibility. You can't do that. Did you have discovery in this proceeding? Not much. Not much. But you had the opportunity to request the documentary background, so to speak. Yes, and my understanding is that Ms. Yanamoto, the declarant, had all kinds of documents on her computer, and the hard drive crashed, and they don't exist. Okay, so how are you, other than having a witness who testifies before the very judge who entered this summary judgment ruling, how are you better off by having what the judge then says, okay, now we're going to have a trial? I'm a little hard-pressed to know how that you have any realistic expectations can come out any better for you. Two responses. If there are no documents, that should weigh in my client's favor on an issue. But the trial judge knows that going in. I mean, the trial judge now knows, presumably, that they said we had a hard drive crash, we have no documents. Correct. The judge isn't going to know anything different when he gets to this bench trial. What he's going to know different is he's going to see a person on the witness stand who's subject to cross-examination. Okay. Okay. I think I passed my eight minutes, Your Honor, and I'll reserve the remaining time for rebuttal. Okay, thank you. Mr. Scale. Good morning. May it please the Court. The law serves the vigilant, not those that sleep upon their rights. There's the sleeping on the rights here. Well… Ackerman kind of gives us a guideline. It says you're sleeping when you get up to six years, maybe. This didn't get close. And that's why we're not here but talking about latches. We're talking about equitable estoppel. Well, but there's more reason why the patent owner here could have been lulled into not suing earlier. As in Ackerman, we have the same sort of fact where the product launches but it's not really profitable until later. And in Ackerman, we said it's entirely appropriate to wait until there is some harm being done and then you can respond. Isn't that exactly what happens here? No, Your Honor. There's a key distinction. In Ackerman, the defendant wrote back to the plaintiff and said, if you want to sue me for $200 or $300, go ahead. That didn't happen. There's no evidence in the record that plaintiff knew the amount of sales of Aramag at that time. And there's no evidence that plaintiff didn't sue because of sales. Well, but now we're into factual issues. This is all summary judgment. You don't get to argue that the facts favor you. You have to argue the facts which show Aramag had a de minimis profit early in this process and growing greater favors them. How do you get around the summary judgment resolution of facts, then? There's an important distinction here. It surely says what the standard is, and plaintiff had misstated it. It is not just de novo review. It's based on abusive discretion based on the judge's findings. The underlying facts get the de novo review, but there has to have been abusive discretion here in order to overrule Judge Chinn. And let me explain some of the facts, which I think will help answer your question. There's two letters sent accusing five patents in March of 2003. Is there any specific charge against your product? Some of the products sold by you may be covered. There's not even a charge of infringement. And then they invite you to discuss with them a prompt and reasonable resolution. Do you ever approach them and say, let's resolve this? In some way, yes. Does the record show anywhere where you went back to them and said, let's resolve this? Well, what the record does show is on May, we responded by saying, you just accused us of five patents and numerous claims. Really, what do you mean? And on May 12th, Aspects then says, we've done our analysis based on the products and accused these two patents and these various claims. And what's telling in the record is that Aspects never says that they accused some product other than Airmen. They did an analysis on May 12th, which allowed them, which they had a product in hand when they were doing it. That fact, there's no other fact other than that it's Airmen. Let's talk about your supposed reliance. Did you undertake the Airmen in reliance on their statement, on their silence? Absolutely. And the record reflects that. And the facts, the undisputed facts show that. You undertake this product, and so if we find that the product was launched very early in this process, before you would have any right to assume they're not going to sue you, that shows you have no reliance, right? If you launched this early in the process, before they would have had a chance to file a suit, then it's clearly not in reliance on them failing, right? In other words, if you launched three, four, five years in, or as in Sholey, launched after you asked repeatedly for them to clarify, perhaps you'd have a reliance argument. But where is yours? The reliance here is that on May 12th, it was written back to them saying, I'm sorry, it was responded. When did you launch Airmen? Airmen was launched February 2003. The letters came March 2003. So you launched even before these records? That's right. And this is where it's intrusive. Where's the reliance? In 1999, Aspect sued Clarity for patent infringement. Clarity immediately pulled the product because it was new, signed a settlement agreement, and the case was resolved. The evidence, which was in the record there, shows that if Aspect again sued in 2003, there's nothing to suggest Clarity wouldn't have done the same thing. These patents, which are all geared towards magnetic eyewear clip-ons, and Airmen was the only product of magnetic clip-ons that Clarity had, so it was clear from Clarity's mind what the product was, as Ms. Yonemoto said in her declaration, which was undisputed, that Clarity would have just simply pulled the product. You can just sell them without the clip-on, and then it's a non-infringing product also. So if Aspect had sued in 2003 when they threatened, and you need to look at the... Did you pull the product as soon as you got this letter? In March... You'd launched Airmag already, and you say as soon as you're charged with infringement, you're going to pull the product. Did you do that? In 1999, they were sued for infringement. In March, they weren't sued, and we responded saying, wait, you've just accused us of a whole mess of patents. Which ones are you really referring to? They told us... They did an analysis, told us these are the patents we're really referring to. We then responded and said, we've done our analysis internally by my attorneys, and there's no infringement. And then dead silence for 3 1⁄2 years, just like in Scholey, where it was 3 1⁄2 years, and Wafer Schaefer, which was even less. And I want to point out, in Scholey, there was no charge of infringement. It only was silence. But in Wafer Schaefer, they gave them a cutoff date. They said, if it doesn't happen by here, it's not going to happen. There's no such thing like that here. In fact, there isn't even a specific charge of infringement, is there? There is a charge of this is a very serious matter. Some of the products may infringe. Will you please get together so we can have a prompt and reasonable resolution? And then threatens damages and an injunction, and says this is a very serious matter. And again, remember the context. In 1999, they had sued previously. All they do is say the law. They're just stating what the law is. I don't know that there's any prohibition against stating what Title 35 says. And they don't charge you with anything. And then this is where it's key. You look at the May response, where they came back with the various patents, which were accused, and said, we're going to sue you on these. And so the fact that after their analysis, they determined that... And in the meantime, you're continuing to gin up air mag. There's no reliance. What did you change as a basis of this? They would have pulled the product just as in 1999. And again, the key is... If you felt that you were in danger, you had every right to pull the product, but you didn't. The key here is, again, the 1999 conduct. They sued when they thought there was... They sued, and then we pulled the product. Where in 2003, they didn't sue. On that reliance... Either you didn't feel threatened, or you didn't rely. It seems... It's hard for you to argue both. There was certainly threat. That's why they responded with saying, we take your threat seriously. We don't willfully infringe. And so please tell us which patents, because you've accused us of five patents, and various claims. Tell us which ones are at issue. And that's why the response, when they came back... Material prejudice? Where's your prejudice? Material prejudice is what they had sued in 2003, like they threatened. And again, I want to pull back for a second. The standard here is abuse of discretion. The judge found reliance. The judge found prejudice. We're on summary judgment. Sholey says that when you're looking at the judge's finding on estoppel, it's based on abuse of discretion. And they don't dispute the facts. They're disputing the judge's conclusion, which you have to, again, find abuse of discretion under Sholey. And so they would have changed the product, just like Judge Chin found properly, and just like the only undisputed evidence shows, that they would have changed the product had they sued in 2003. The fact they didn't led to a numerous amount of sales, which counts as prejudice under AB Robotics. They then made investments, which can't be recouped. The argument that there's no specific tie to Aramag, there's no evidence in the record that it isn't tied just to Aramag, just as Ms. Yonemoto had said in her declaration. And to answer one of Judge Bryson's questions, the discovery in this case had closed. It had fully completed. So Aspects had every opportunity to do whatever discovery it needed, and it didn't find any evidence to dispute that there was reliance, that there was material prejudice and misleading conduct. All things that the judge found. What happened ultimately, I don't remember if Chin mentioned this, to the 054 and 811 patents that were referenced in the May 12th letter? Were those ever pursued? Those were never pursued either. And there was no communication about those patents after the May 12th letter? That's correct. So the next thing you heard was just you got a complaint referencing the 747? Is that the number? That's correct. Well, what happened then was in October or August of 2006, they sent another letter accusing the 747. We responded in November of 2006 saying, you're equitably stopped laying out all the law. Right, okay, but I misspoke when I said the complaint. It was the 2006 communication about 747. That's correct. But there was no reference, no further activity with respect to the 054 and the 811 after May 12th? That's right. They completely dropped all of the patents without explanation. And you look at the cases where you find that there's no estoppel, there's a reason given during this long period of silence. Aspects should have communicated where you don't have enough sales, which is a requirement that you can see in the case law, that you were doing some reasoning other than just silence. But they did say that there weren't enough sales in the beginning, at least in their briefing here, to fill the gap. They never said it in the letters. The letters never said there wasn't enough sales. The letters gave no reason for the long period of silence, and Aspects has offered none. There's no evidence in the record, and again, you review Judge Chin's findings for abuse of discretion. He didn't abuse his discretion in finding those three key elements. I'm going to briefly turn to 285 damages. There was clear error because Judge Chin didn't consider the November 2006 letter where it was laid out that estoppel applies in the very same reasoning that Judge Chin gave in his opinion. I'm sorry. Yes, the very reasoning he gave in his opinion as to why estoppel applied. And the fact that they were warned and never did anything about it puts Clarity in a position where it could not have avoided spending this money on litigation. They did everything they possibly could. Judge Chin didn't consider that, and it should be considered that, and then there was evidence of knowledge in the record that, with respect to the inequitable conduct. Tell me again why Ackerman doesn't allow Aspects to wait until your sales grow to a point where their market is actually in danger? They do, but you have to communicate that to the accused infringer. Where is there a requirement that they invited you to come forward and come to a prompt resolution? Why didn't they have every entitlement to wait for you to come back and say, let's deal with this? We did. Again, we responded then with our March letter, and they responded in May saying, you infringe our two patents.  Stop selling these or we're going to sue. And then nothing happened. I take it your position, in a nutshell, is that the May letter, as much as said, we're giving up on the 747 patent. Absolutely, Your Honor. Because they focused, after you had said, they had initially said, here are the patents, you had said, we don't infringe any of these patents. Which ones are you? Give us the particular claims you're concerned with. They come back with these two patents and particular claims of these patents. Silence with respect to the 747. The inference you draw from that is that the 747 has been abandoned. That's exactly what happened. Ms. Yonemoto said that was what happened. And there's no evidence in the record to suggest that didn't happen. So again, Judge Chin's finding on this can only be overturned based on abuse of discretion. And we do not believe that he abused his discretion. Okay. Thank you, Mr. Scalia. Thank you. Thank you, Your Honor. Just a few cleanup points on the Estoppel issue, and then I'll be very brief on the 285 issue. On this issue of there was just one product, the court will see in the record that there were a couple of letters and a couple of patents. They're not all the same type of patents. The two that Your Honor mentioned, Judge Bryson, they're called bridge-mounted patents. That's where the magnets are on the nose bridge. The one at issue in this case, the 747 patent, is called a back-mounted patent. The sunglasses clip onto the back. But what's the explanation for not mentioning the 747 patent in the follow-up? Your Honor, there's nothing in the record on that, and I would not speculate as to why they didn't come back and say that. But why isn't it reasonable for them to assume that the 747 is out of the issue? I mean, the way people proceed in these kinds of things is you narrow the area of dispute between yourselves, and they asked you to narrow the area of dispute, and in your letter you came back and you narrowed it by focusing on these two patents. Why isn't it fair for them to assume that the 747 was out of the case? Well, the reasonableness of their reliance, I think, it's not a summary judgment issue. It's definitely an issue of fact. We have Yamamoto's declaration. Well, I'm asking you now, for purposes of our thinking about this letter, why shouldn't I look at this letter and think that that looks to my eye, looking at this, as if you're saying, forget about the 747, focus on these claims of these two patents as the areas in which we continue to feel that you have infringement exposure? Well, between you and me, Your Honor, I don't think it's reasonable. I think Judge Bryson hit it on the head. Why didn't Clarity come back and say, hey, wait a minute, you didn't mention the 747 in this letter. Was there a mistake? Are you dropping it? There has to be a burden there on their part. I don't think it's reasonable to just say, oh, good, because there are more facts here. They sent, they being Clarity, sent the March 10, 2003 letter to their supplier, who supplies them with the infringing products. The supplier got an opinion of counsel in 2005 on the 747. They sent it to Clarity in 2006, and Clarity relies upon it in their summary judgment papers. There's no evidence that the supplier gave opinions of counsel on the other patents, on the Bridge Mountain patents. Gee, why is it just on the 747? And that's why we cite cases like Hall, which says when you're talking about reliance, we want to see contemporaneous evidence and not post hoc speculation. And that's what Yanomoto says. She says, well, it would be very likely that if we pursued earlier, we would have pulled the product from the market. Well, that's nice, but there's not one document showing their internal thinking. And even the case that they like, the ABB Robotics, there was a key internal memorandum showing not only the prejudice, the material prejudice showing the investments in the Nexus, but why. But why they did what they did. There was a key internal memorandum. And I think you need that type of evidence to have a summary judgment that prevents us from suing them at all. Very quickly on 285, they say because they sent us a warning letter. They didn't mention it in their argument, so we're willing to rely on the briefs. Then, Your Honor, I'm perfectly happy to rely on our papers on the 285, and I thank you for your time today. And for all the reasons discussed today and for all the reasons in our briefs, I respectfully request that the summary judgment order be vacated and that this case proceed. Thank you very much. Okay. Thank you, Mr. Nicodeno and Mr. Scalia. The case is taken under submission.